We are now recording. This honorable appellate court for the second judicial district is now in session. The Honorable Susan F. Hutchinson presiding. You're on us the third case on the docket this morning is to dash 21 dash 0601, the people of the state of Illinois plaintiff athlete, the Ronald a Miller defendant appellate arguing for the appellant, Mr. Leonard Goodman arguing for the Apple we miss Pamela as well. All right, good morning Council. Thank you for your participation today and if you are ready, Mr Goodman you may proceed. Thank you, Your Honor, may it please the court and counsel. My name is Leonard Goodman and I represent Ronnie Miller. I'm going to begin with the issue, as requested by the court about the failure to obtain a forensic child psychologist at this trial. And I would begin by noting that this was an unusual case at trial. The child GM testimony was not directly incriminating. She merely stated that her father. Yes, Mr Goodman. Yes, you say in your both your opening brief and your reply brief that there was no direct evidence. Other than the 115 10 statements but then GM testified that the defendant touched her private parts and exit and she showed the jury where the defendant touched her when she was without clothing. Correct. Why is that not direct testimony? Yes, the testimony testimony was the quote. Daddy had touched my privates. She thought that it happened two times more. That was her testimony. It's laid out in my brief. She also said that it hurt and she pointed it to getting her ears pierced. She said that it hurt a little as in getting your ears pierced. And what what I would suggest to your honor is that any father, myself included, has touched their child's private parts to wipe or to apply medicine. We know that that was done in this case because the child had redness on occasion and had been prescribed cream, which the father helped put on. So the fact that it might hurt a little bit if she had irritation down there, I don't, I would not consider that to be direct evidence of sexual abuse. I can't hear you, your honor. Doesn't that go to the weight that the that the jury should give to that. Certainly, your honor, I'm just suggesting that that's not what the state, what the prosecution relied on at the trial. It was not that testimony that the state relied mostly on the prior testimony and on the testimony of I'm sorry, on the prior statements and on the testimony of the nurse, which I'll get to in a moment. But it was the out-of-court statements accusing petitioner of abuse that were the focus of the prosecution's case. These statements were made shortly after the initial outcry reported by the mom. And when GM was five years old and the prosecution relied most heavily on the videotaped forensic interview of GM at the Carrie Lynn Center in Rockford. The video. Can you all hear me? Okay. I'm sorry. Yes. Okay. The video shows that GM's mother brought the child into the room. And that before the interviewer had asked any substantive question, the child volunteered. My daddy's touching my cuckoo, strongly suggesting that she had been coached. Many of the allegations that GM made during this interview were conceded to be false. There is allegations about a dog pooping on her. Why is who conceded that that was false? The state did at trial. They conceded that they don't make sense. Why could that not be interpreted by a jury as just a trial's explanation for something that happened? For example, dogs poop, right? You step in poop, right? Yes. Sometimes people lock their dogs in the bathroom and the dogs poop in the bathroom. I mean, that's a child's explanation. And the Supreme Court, I'm going to ask this question in a little bit about Becker. The Supreme Court recognized that that's within the kin of an average juror to understand that children say things that sometimes may seem fantastic or out of the ordinary. That doesn't mean a child is lying when he or she says that she's been inappropriately touched. Well, Your Honor, I'll agree with you about the dog. However, it was conceded that the father had never had a cast. She described that he had a cast on his arm. It was conceded the child. She said he had a cast. She didn't say arm. I believe it was the arm. Yes. And she said that the abuse happened in front of her aunt who called the police. The police came and they gave him one more chance. That he was arrested and he did it again and broke out of jail. I think all of those things were demonstrably false. It's also shown in the record here that the child GM made another accusation of abuse in January 2016. This was right after petitioner's family had obtained court-ordered visitation with their grandchild over the mom's objection. This allegation was also conceded to be false. It was conceded that the petitioner's last contact with his child was shortly after the outcry in mid-July of 2015. It was used by GM's mother, this new accusation, to end all contact between GM and petitioner's family. As in most cases where you want to question the credibility of the witness, could you bring in a character witness? Could you have brought in someone to say this girl tends to make up stories or tends to hyperbolate or something to that effect? Do you think that might have been something that would have been beneficial? I can't really speak to whether that would be admissible to bring in a character evidence that this child makes up stories. I don't know whether that is the case, that this child is prone to making up stories. I can't really answer that. I just know that in this case, there were strong reasons to question the credibility of those prior statements. What then did you want this forensic expert to do? Well, what the forensic expert did, and there's I think a 21-page report from Dr. Thompson. And what Dr. Thompson would have done is he would have done what, similar to the expert in Cardamone, he would have addressed psychological concepts that are not within the ken of an average juror. Let me ask you this. Yes. With respect to your reliance on Cardamone, in People v. Becker, the majority in that case relied upon Cardamone. The dissent relied upon Wilson. The Supreme Court reversed the appellate court and held that Wilson was the correct analysis. How can we reject the state's reliance on Becker when it's clear from the Supreme Court that they relied on Wilson? The court adopted the analysis in Wilson and said that it is improper. It's that type of evidence, and it's both reliability and credibility, and it's clear from Becker. How can we rely on Cardamone? Well, I'm not asking this court to reject Becker. What I'm suggesting is that Becker presented very different facts. In Becker, the expert said, his proposed testimony was that this witness is not credible. In fact, the expert said that there was no reason for him to talk to the witness because the witness was tainted and nothing that the witness said could be reliable. Yes. The Supreme Court noted specifically that the expert concluded that nothing the victim said in that case was quote-unquote reliable. So whether you characterize it as credibility or reliability, it all goes to veracity and whether or not the statements or the testimony should be believed by the jury. Yes. There were two problems in Becker. One is that it invaded the province of the jury because he said that this witness can't be believed. Our expert does not do that. And secondly, the other problem in Becker is that the expert talked about suggestibility, concepts that were understandable to the average juror. In both Cardamone and in this case, the expert addresses psychological concepts that are not within the ken of the average juror. Such as forensic interviewing techniques, confirmatory bias. In this case, the importance of recantations. The other unusual fact in this case is you have a child that prior to trial recants, tells at least three different people on different occasions, including her mother, a therapist, and the trial prosecutors on two occasions that her dad never touched her except to put on medicine. And how would calling an expert assist the jury when the recantations and the changes were all before the jury? Well, I think with respect to the recantations, what the expert says in his reports, that it is highly unusual to have recantations and that they are highly significant. He also talks about the interviewing technique and the fact that the interviewer did not follow up. For example, when the mom brings the child into the room and the child starts saying, my dad touched my cuckoo before being asked a question, the interviewer did not follow up on suggestions that perhaps there was coaching there. Instead, just said, well, tell me about that. How about the drawings? How does a five-year-old child know what a penis looks like and know what the areas that she was touched and be able to describe it? Do you think she was coached? Well, I can't say whether she was coached by the trial prosecutors. Certainly, she was brought in for... Those exhibits clearly corroborated her 11510 verbal statements, correct? I mean, do five-year-old child see their father's penis? I think it depends on the parent, whether the child knows what a penis looks like. I don't think that that is... Well, the defendant never testified that he showed G on his penis, did he? I don't recall, to be honest, Justice. And I thought her testimony was rather consistent that she really never saw what he was doing. Isn't that correct? Are you talking about her testimony at trial or on the... When she was in the video center, on the video. She didn't... Did she ever say that she actually saw her dad's penis? I don't recall that either. Sorry, Justice. Mr. Berman, other than people versus cardamom, are you aware of any other authority that distinguishes the terms reliable versus credible, credibility versus reliability, other than cardamom? I'm not. I'm not. Yeah. I think that, you know, to me, the crucial issue is, does the expert discuss psychological concepts that are not understandable to the average juror that would be helpful? And secondly, would it be helpful to the jury, which is the main thing that you ask about any expert? And secondly, is he taking away from the jury? Is he telling the jury not to believe this witness? And so our expert does not do that. The expert in cardamom does not do that. The expert in Becker did. So I think that's, to me, that's the critical fact. And at oral argument on the motion to dismiss, you acknowledged that you had specifically spoken to the doctor about drafting his report and to not talk about credibility. Correct? I don't recall that.  I think, in fact, the doctor told me about cardamom and said that this is something that you need to be aware of, that I cannot comment on credibility. So that's the way I remember it. I don't recall exactly the oral argument. Well, you mentioned that you had had a conversation with him about that. I did. That is correct. So he was aware of the fact that cultured in terms of reliability versus credibility. That is true, Your Honor. Absolutely. Let me ask you this with respect to your reliance on Davis. In Davis, this court discussed and on direct review said the lip print methodology was reliable and we upheld the defendant's conviction. But during the post-conviction proceedings, the lip print testimony completely undermined, the expert testimony completely undermined the defendant's alibi defense. And that's what we said in that disposition. We also indicated that and looked at the record that the letter from the FBI that completely discounted and said that they had never conducted any validation studies on lip print identification and determined that it would not perform lip print analysis. How does that support your argument that trial counsel was ineffective for failure to call an expert witness? Well. I mean, did your expert witness completely undermine any element of the state's case? What I think I guess on this issue, I would say, first of all, I would say that this this to me is a more important issue than the issue of the child psychologist, because the state did call an expert. The state did call Nurse Kruger. She was disclosed prior to the trial. And in fact, it was disclosed prior to the trial that the state would not approve criminal charges until Nurse Kruger would say that there was the child's medical history was indicative of sexual abuse. Well, she said that the pattern together with the statements of GM made it highly suspicious. Correct. Well, what do you use the words highly suspicious, not indicative or correct at trial? I'm talking about what was disclosed during discovery was a DCFS report where it said that the state would not approve approved criminal charges until, quote, GM's medical history could definitively be connected to sexual abuse. And then a follow up report states that Nurse Kruger was willing to make that testimony. So that's what the defense counsel knew prior to trial. We look at what do we look at that issue or do we look at what the record shows from the trial? Well, certainly you can look at whether there is prejudice and at the trial. That's certainly an important issue. But I think when you have the state calling an expert to give testimony that I think the state has conceded was not scientific. There is no at least the state the state has not disputed that that this is almost amounts to quackery to say that to say that some instances of two instances of urinary tract infections and some redness is highly suspicious for sexual abuse. Now, all we have in the record is the testimony of our expert who has 40 years experience, board certified gynecologist. We have the record on that. Yes. Why won't that testimony be cumulative? Cumulative because Dr. Rhodes, the examining expert, testified that the medical history itself did not cause any suspicion of sexual abuse, correct? And in the defendant's affidavit, he says that his lawyer told him we don't need to call an expert because there's there's no evidence of sexual abuse in the medical records or words to that effect. That's what he says in his affidavit. So doesn't that show that trial counsel consider calling an expert and decided not to? Well, it was certainly was discussed with her client. And her response was that we don't need an expert because there's no physical evidence of abuse. However, that's not the way it was portrayed to the jury. And certainly, if you look at the discovery, the discovery says very clearly that she's going to get up there and say that there is physical evidence of abuse. Again, Dr. McCubbin's testimony would have been cumulative, would it not? Because in a closing argument, trial counsel said in disputing what Kruger said, trial counsel said, you have the doctor who was actually treating treating GGM, saw her over a number of years since she was born, as well as a variety of visits. And apparently didn't see her every time, but saw her for these visits. And she says she believes it was because of hygiene problems. She did not refer for anything else. She is the hands on doctor dealing with GM. So why do you need an expert when the state's own treating physician supports your theory of the case? And because your honor, the state stood up and told the jury not to believe Dr. Rhodes because she is not an expert. You need to believe our expert. She is somebody that is certified as an expert. Are you saying that the state that the defense happens all the time, doesn't it? Where we're experts kind of contradict each other. And Dr. Rhodes was called by the state, not by the defense, and she was not called or qualified as an expert. She was thoroughly cross examined. She was the treating physician and she was thoroughly cross examined. And defense counsel established that the medical history itself did not give rise to any suspicion of child abuse. Well, she testified in direct. And in fact, it wasn't even cross. She testified in direct that she had Dr. Rhodes. I'm talking about Dr. Rhodes as well. She talked. She testified in direct that that in her opinion, there was nothing suspicious. And the prosecutors told the jury very explicitly. I cited in my brief to disregard her testimony because she's not an expert. You have to believe our experts. She's qualified. She's the one that's certified as an expert in child abuse. I think under those circumstances, the defense had to call an expert to rebut that and just rely on the state's witness. Case law is very clear that the decision to call any witness, including an expert, is within trial strategy and presumptively falls within wide range of professional conduct. Correct? There is case law that says very definitively that in certain cases it is ineffective assistance to not consult with an expert. Certainly, Davis was one of those cases. And this, we believe, is one of those cases as well. You have such a weak case going into trial. And the state, in fact, the state wouldn't even approve felony charges until this, their expert nurse practitioner would say that the medical history was indicative of sexual abuse. And they relied heavily. I mean, if you look at the rebuttal argument, they relied heavily on Nurse Kruger. They told the jury to disregard the treating physician, Dr. Rhodes. I think under that circumstance, I don't see how a defendant could possibly hope to get a fair chance without having his own expert. So I would I would respectfully disagree with your honor on that matter. And I don't know where I am in terms of time. Well, Counselor, your time is actually up. I've been allowing Justice Shostak to finish their questioning. And I would ask them at this point if they have any other questions that they would like to ask. No, thank you, Mr. Goodman. No. All right. Mr. Goodman, you have an opportunity to reply. Thank you. We will return to you after Miss Wells is complete. If you wish to respond. Thank you. All right. Miss Wells, you may proceed. Thank you, Your Honor. Good morning, Your Honors. Counsel, may it please the court. A couple of things I want to address. First off, Counsel refers to in his reply brief my reference to page 887 as some court findings. The reason I referred to that is because it is in the record as a case management order. The page 886 and 887 are referred to in the record as a case management order. Therefore, I referred to it. I do that understanding this is a de novo review. I pointed out what the people believe the court's findings are based on that. But there was a reason I referred to it in that way. I think that the court has focused on a couple of things that we need to address here, which are whether counsel's decision not to call an expert fell below prevailing professional standards, and but for her decision not to call the expert that the result of the proceedings would be different. Certainly, if you have two conflicting expert witness statements, I mean, you have the Kruger woman is saying, you know, oh, this is definitely sexual abuse. This is definitely child abuse. But when she was asked whether or not it could have been something else, she's like, well, it could have been. But in this case, this was child abuse. I mean, wouldn't wouldn't there have been more doubt thrown on this statement? Were there an expert on the defense side to rebut that? Just because someone else would have chosen a different strategy doesn't mean that counsel's decision to rely on Dr. did would make counsel's strategic decision ineffective. We do believe that West is is very important, that there's more than one way to try a case. And counsel made a strategic decision. She even said, you know, I don't want you to rely on Nurse Kruger, who is looking over the actual treating doctor's shoulder. I'm sorry, Justice Burkett, were you did you have a question? Yes. The defense knew prior to trial that Kruger was going to get on the stand and testify that this pattern of the in a short period of time, the eight visits made it highly suspicious, which was her testimony, not the reporter. But her actual testimony was made it highly suspicious, not indicative or confirmatory, but highly suspicious of sexual abuse. Wouldn't it be prudent to at least line up a doctor to testify to say that all the medical literature rebuts that claim? Well, Nurse Kruger's testimony was actually based on three different things. It was her exam, which was negative, her physical exam, her conversations with GM and the child's medical history. So it was a it was a group of things that Nurse Kruger relied on. And while it might have been in hindsight, counsel could have used a different expert. Her choice to rely on the treating physician can't be seen as contrary to prevailing norms or deficient in this case. Just in hindsight, someone deciding, hey, I should have done this or maybe this would have been helpful. Doesn't mean her trial strategy was ineffective. And we think that is important. Would Dr. McCubbin's testimony have been cumulative to Dr. Rhodes testimony? I argued that in my brief and absolutely. Dr. Rhodes and Nurse Kruger actually said no physical evidence of abuse. She was straightforward about that testimony. It's only looking at all of the factors that she considered that led her to believe, as the court has, as Justice Burkett has succinctly stated, it was highly suspicious. She did not say that it was a confirmatory. She did not say that she had specific evidence of child sexual abuse. But this could be an explanation. And in her opinion, it was highly suspicious because of the short time period with the high number as well as GM statements to her. So could you could one argue. Can you hear me? Yes. Yes. OK. Could one argue then the the entire fact abuse of discretion in finding this man guilty when nobody said that this was child abuse? No, because we still have the testimony of GM, the statements that she made to Miss Johnson. We still have the statements that credibility issues. Correct. We don't believe that there were credibility issues with that. No. In light of Becker, do you believe that do you believe that cardamom is still good law? The Supreme Court chose not to specifically address cardamom and cardamom is is in a different pasture. Cardamom only said trial court. You wholesale said, I'm not letting this expert testify without looking specifically at each portion of what the expert was going to testify to. So please, trial court, go back and do the full analysis that is required before you decide to admit evidence or exclude evidence. Cardamom did not say this evidence should be admissible or it shouldn't be admissible. The court was very careful to say they were not expressing an opinion regarding if any portions of the testimony would be admissible. They just felt that the trial court had given short shrift to the admissibility determination and therefore sent it back for that reason. So I do think that Becker, which is is very specific. And the testimony in Becker follows step in step with what Dr. Thompson was going to testify to. And I really think it's important when Dr. Thompson identifies reliability on page 465 of the record. He says it refers to the accuracy of procedures in looking at investigation and information obtained. In other words, believability. And Becker looked at reliability and believability. The witness in Becker specifically said, I'm not testifying about credibility, I'm testifying about reliability. And the Becker court said that doesn't fly with us because the real issue is whether the witness should be believed. And it wasn't the witness that said, I'm going to tell people you shouldn't believe her trial testimony or her statements in the BSI. It was the court that said the testimony as a whole resulted in effectively telling the jury to disregard. And therefore, it impinged upon the credibility determinations of the jury. But importantly, it also was not outside the knowledge of the average juror. And coaching and those types of things. The jury got to see this video. They got to see the interview. And I think it's very important to point out, the defendant is not saying that the court erred in making a 11510 determination. Or this witness would have gotten the video not to be admitted pursuant to 11510. He's only in his briefs arguing that it would have helped the jury assess the reliability of the video. Specifically with respect to recantations. Counsel argued in his argument today that Dr. Thompson would have explained to the jury that recantations are very rare. You want to comment on that portion of Dr. Thompson's testimony, proposed testimony? That is not focused on very much by Dr. Thompson in his report. It also was not necessary to use an expert for that. Because this child did make statements recanting, altering what she said, giving different versions of what she said. There was no expert on the state side to explain recantation. In fact, counsel for the defendant highlighted those recantations. Highlighted the child's inconsistence or fantastical statements to say you can't believe anything that GM says. Because she's so incredible. She is inconsistent. And in my brief I do cite specifically to the portions of counsel's argument where she heavily emphasizes that this very interview that they're trying to say was not reliable. And wanted an expert to say wasn't reliable. Counsel for trial counsel was saying, look, she wasn't credible during this interview. You don't need an expert to tear apart the interview when counsel is relying on that very interview. Now, could you do that? Different strategy. Not saying that this type of testimony might never be admissible. But in this particular case, the question is, did counsel have a strategy? And was she ineffective because she didn't pursue a different strategy that someone in hindsight disagrees with? Yes, Justice Burkett. In People v. Simpkins, which I think the Supreme Court cited in Becker, there was proposed testimony as to why victims recant. And the court said, when stripped to its basic level, Duval's testimony regarding recantation by child victim constituted a commentary on KS's credibility similar to eyewitness opinion testimony. So, if that is the case, does the defendant's argument hold any water at all? I think Becker clearly shows that this type of testimony goes straight to credibility. And that is why it is not admissible. So, no, I don't think it holds any water, Justice Burkett. I agree 100%. That does not necessarily excuse the failure to at least consider calling an expert on that topic, though, correct? Considering calling an expert, there's no evidence that she didn't consider that. The fact is, she chose to emphasize the fantastical statements of GM throughout. It was a consistent strategy from opening statement, cross-examination, closing argument. She beat that drum throughout the trial. Do you want to comment on counsel's argument about the other recantation, the one that occurred later after the report? I think it was January 3rd. Can you comment on that? Yes, Your Honor. On January 3rd, there had already been an investigation related to a different sex abuse allegation. Are you talking about the subsequent false allegation? Yes. Maybe I misunderstood Justice Burkett. Is that what you were asking her? Yes. Well, there's two. There was a subsequent recantation, but also the other allegation. I think it's really important to realize that even in their own brief, they say GM was trying to recant to anybody who would listen. They blame Ms. Johnson for bringing forth this subsequent allegation of sexual abuse, except for Ms. Johnson never said that. All she said was GM reported to her that she had contact with her father, and GM immediately reported that spontaneously to a police officer that was present. Ms. Johnson never said that. It was several days later that GM reported that to a DCFS worker, and then she subsequently recants that to her counselor. It's a very interesting timeline of when that recantation occurred, and that's why we put in our brief that arguably that subsequent statement isn't exculpatory at all because it applied to later disclosure. I do want to say one thing about the records. The victim's constitutional right to privacy and the cases that say that that is an absolute privilege, that is why we filed our motion to destroy those records. Just having them in a clerk's file where somebody could unseal them, somebody could look at them, this is a child and she's got many, many, many, many years to go on in her life. We think that constitutional right to privacy should be upheld and those records should be destroyed in our motion as to that effect should be granted. Thank you. Is that something you should ask the trial court to do or us? I think this court under its supervisory authority has absolutely every authority to direct the circuit clerk's office to destroy those records. If the court feels that a motion should be made in the circuit court, we're happy to do that with an order that you direct us to do that, but we think you have that. The state has no right to cross appeal or ask for that type of relief. No. So it would have to be in the trial court. Correct. Well, I think because the appeal is in front of you at this point about those records and those records are part of the record on appeal. This court could actually as supervisory authority for the circuit court, direct them to just have those records destroyed. That's all I have. Justice Shostak, anything else? All right. Thank you very much, Miss Wells. We will return to Mr. Goodman and there he is, to see if he has anything to address. Thank you, Your Honor. I think with respect to the first issue of the child psychologist, I would just like to add that the significance in this case is that the prosecutor told the jury that the statements made in the forensic interview must be believed because the forensic interviewer is forensically trained to talk to children and has tremendous experience doing that. And secondly, that kids don't lie about these types of things. So I think under those circumstances, having a child psychologist would have been critical to rebut those. Also, just to prepare counsel for cross-examination of the interviewer, Miss Tishman, that interview, that cross-examination spans about four pages of the transcript. And basically, the trial lawyer ends up just saying, well, the interview speaks for itself. I also would just point out that- You didn't argue that the cross-examination constituted ineffective assistance, did you? I did not. So that argument is forfeited. I did not argue that it was ineffective. But the point is that having an expert would have informed counsel on these issues and on the deficiencies of the interviewing technique, ignoring signals. Secondly, I just would point out that I looked at the testimony, the argument of the state regarding Dr. Rhodes. And they actually ridiculed Dr. Rhodes in closing argument by saying that she's- Dr. Rhodes, not an expert in child abuse, keeps telling them, well, work on wiping, work on wiping. And the defendant and his mom and sister jumped on that story to explain away what Shannon Kruger said, didn't they? I think having a child psychologist would have been crucial. I think the other thing that I would say, Your Honor, is the U.S. Supreme Court said in Strickland that a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. In this case, the Supreme Court has also said that, quote, in Harrington v. Richter, that criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence. Mr. Miller was convicted in this case on accusations made two years before his trial by a five-year-old child who appears to have been coached by her mom. Where is the evidence that she was coached by her mom? Well, the fact that- there's circumstantial evidence. There's no direct evidence. It's a suspicion. What I would say is you have the mother bringing the child into the room and the child making accusations without being asked a question. The record is clear that the mother did not immediately take or report GM's outcries to the police or to DCFS. It was Dr. Rhodes who initiated the investigation, not the mom. Well, it was done quite quickly and the order of protection and it ended all contact between the father and the mom. And the other thing that I would say about the recantations, Your Honor, to the trial prosecutor, to other people, the case went forward nonetheless. I think the other important thing about the recantations is that there was no pressure from the father because the father had no contact with his daughter. So you have recantations become more significant when there is no contact or urging from the father. What about the comment that I just made, People v. Simpkins, where the court said, When stripped to its basic level, Duval, the expert's testimony regarding recantations by child victims constitutes a commentary on chaos, discredibility, similar to eyewitness opinion testimony, and it's not admissible. But since Simpkins, with respect to the case law on eyewitness testimony, science has evolved and expert witness testimony on eyewitness identification under People v. Lerma is now admissible. Has science evolved in terms of the study of recantations and child witness testimony? Your Honor, I'm not able to answer that. You understand my point. I understand it. Science evolves, but at this time, at this time, at this mark on the calendar, Becker is still good law. Correct. And, you know, again, we retained an expert because I'm not an expert in these fields. I would not have felt comfortable going forward with this case without an expert. I think Dr. Thompson's report, he is an expert, and he says that recantations are certainly significant, especially when there's no evidence of pressure from the father. I think, in this case, you have the prosecution telling the jury to believe a flawed report and nothing to rebut that testimony. To get a conviction, the prosecution called. It's very clear that they relied heavily on a medical expert, a supposed medical expert, to tell the jury that some incidents of UTIs and redness were evidence of sex abuse. We have an expert that says that that is absolute nonsense. The jury never heard that. If I was sitting on the jury, I would have believed it. I wouldn't know whether that's true or not. Even a father doesn't, you know, unless you've been through that with your child, you don't know. There's a reasonable probability in this case that the result would have been different if counsel had retained an expert and put on some meaningful challenge to the state's case. It gives no pleasure to accuse another lawyer of ineffective assistance. I've been a defense lawyer for many, many years. I've made mistakes in trials. We all have. It's nothing, it's no criticism of the lawyer. She certainly cared deeply about this case. But we all make mistakes, and there are circumstances when you have to have an expert, and this is one of those cases. And I think you just have to look at how weak the state's case was. I've never seen another one like this. You're relying on suspect medical expert testimony and video evidence that's highly flawed that was from two years before trial that has been recanted by the time the case went to trial. That's all I have, Your Honors. Thank you. But let me just maybe finish up with this question. You have the child herself who was inconsistent then when she testifies on the stand versus what she said earlier in the interviews, and she says she loves her father, and she makes that clear. And the state actually says, Judge, I think we might have a problem with her running up and trying to hug her dad. Correct. Should we do something about this? I mean, this little girl, it's her father. She hasn't seen the man, and she loves him, but the testimony and the evidence goes to the fact that he loves her too, but in the minds of those experts, there is a suspicion of sexual abuse. Isn't it the jury's responsibility to look at everything that's happened, everything before them, and make the ultimate decision of who's telling the truth? It certainly is, Your Honor. It certainly is. But in certain cases, if the state is going to call an expert and that expert's testimony is not scientific, there's an obligation, and Davis is right on point. There's an obligation to call an expert, and the fact is the state has participated in keeping this child away from her dad, and the child is suffering for that, and the child has told anyone that will listen, including therapists, that this never happened. And the jury heard those things. The jury did not hear those things, Your Honor. Well, the jury heard some of them, maybe not all of them, but heard some of them. The jury heard that there was a recantation prior to trial, certainly. There was a stipulation that there was a recantation, and there were other recantations before the interviews by the state's attorneys. Correct. They did not hear about the therapist. They did hear that there was a recantation. Well, they shouldn't hear about the therapist, right? There's a privilege. There is a privilege. That privilege is not an absolute privilege, and the Supreme Court has talked about that in Nixon and in another case. The Supreme Court said it is an absolute privilege, and in order to get around the privilege or to break the privilege, you have to establish not just a mere suspicion, but some reasonable grounds to believe that there's going to be, quote unquote, braiding material. And the trial court acknowledged that there may be some arguably favorable evidence to the defendant, but that's it. After an in-camera inspection? What the Supreme Court said, and you're correct, what the Supreme Court said in Foggy is that, first of all, they acknowledged that it's not an absolute privilege, that it must give way if the defendant can come forward with evidence, and the defendant could not in Foggy. It was basically a fishing expedition. In this case, there is actual evidence. This is actually a quite simple case. It's undisputed on the record. There's actual evidence. There's a DCFS report, which indicates that GM told her therapist that it didn't happen. My dad never touched me, and the judge... Mr. Goodman, the trial court reviewed the records in camera, correct? Yes. And on this record, and based upon what the trial court said, how can we possibly say that the trial court abused its discretion? Because your Honor... I know it's a catch-22 for you and your client. What the trial court said is that, yes, these are arguably exculpatory, but the state has made me aware of this absolute privilege, and therefore I have no discretion. The judge was just simply incorrect. The U.S. Supreme Court has said quite clearly it's not an absolute privilege. It must give way. There's due process, and Nixon, and then there's one other case. I'm blanking on it right this moment, but there's one other case that says very clearly that that privilege is not absolute. Even the most strong privileges must give way in the name of due process and in the interest of a fair trial. So the judge just simply was not aware of that. Well, the trial court, his finding was that it was arguably, arguably exculpatory. That's different. Well, I didn't put much weight in the word arguably. Well, you don't, but the courts have. Just because something is arguably favorable to the accused does not mean that the privilege is evaporated. Well, Your Honor, what I would say is if you look at the judge's comments in context, it's clear. First of all, we know what arguably exculpatory means. We know that the child told the therapist, Dad didn't do it. So I think that's more than arguably exculpatory. And we know from looking at the judge's comments that the reason why he withheld those records is because the state pointed out that there's an Illinois statute that gives an absolute privilege. And he said, I'm going to go with that. I think he was just wrong. And I don't I think Foggy acknowledges that, in fact, it's not absolute. Absolute. If you can show that you really need this information and certainly if it's exculpatory, that's that's the greatest. How could you have a greater need than that? It would have been cumulative. To all the other recantations. Well, I respectfully disagree. I think if you're if you're talking to a therapist, that's the only people that the child can talk to because the mom doesn't want to hear it. She's not allowed to talk to any member of the defendant's family since, you know, since 2015. This poor child has been cut off from her paternal grandparents. The only place that she can talk is is in therapy. And the fact that she's telling a therapist, we don't know how many times. We don't know what she said. Perhaps she's reported other abuse by another member of the household, which, as Dr. Thompson stated, could be transferred and manipulated to allegations against a defendant. We don't know. But I think there's certainly a sound bit. This is not just a fishing expedition. We have evidence and the judge has acknowledged that there's exculpatory information in there. So I think this is an easy case. And this is the exact case that the Supreme Court, Illinois Supreme Court, talked about in Foggy. Yeah, if you can make that showing, you've got to give that to the defense. Justice Shostak or Justice Burkett, any other questions? No, thank you. No further questions. All right. We can get this Wells back so that we can say a proper goodbye. Thank you, counsel, for your arguments this morning. We do appreciate your waiting and we appreciate the arguments. And it was they were worth waiting for. So thank you so much. You we will make a decision in due course. And at this point, you are excused from this proceedings. And thank you, Your Honors. And I appreciate the accommodation for the remote hearing. Nice job by both of you. Yes. Thank you. Thank you. Thank you.